NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0970n.06

No. 12-2237

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 13, 2013
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| JAMES RICHARD VANDERWEELE, | ) | THE WESTERN DISTRICT OF |
| | ) | MICHIGAN |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |

Before: SUTTON and KETHLEDGE, Circuit Judges; DOW, District Judge.[*]

KETHLEDGE, Circuit Judge. James Vanderweele pled guilty to possession of unregistered firearm silencers in violation of 26 U.S.C. § 5861(d). In his conditional plea agreement, Vanderweele waived his right to appeal, except "to seek review of the U.S. District Court's denial of his motion to suppress evidence." He now appeals the district court's denial of that motion on two grounds. First, he argues that his statements to an ATF agent should be suppressed on grounds not argued below. Second, he argues that there was not probable cause to issue a search warrant. We affirm.

---

[*]The Honorable Robert M. Dow, United States District Judge for the Northern District of Illinois, sitting by designation.

I.

On July 28, 2010, an informant told ATF Agent James Petschke that, four to five months earlier, he had seen James Vanderweele with a .22-caliber pistol and a silencer at the Rebels Motorcycle Clubhouse in Escanaba, Michigan. The informant also said that Vanderweele demonstrated how the silencer screwed on to the barrel of the pistol. Six weeks later, Petschke checked Vanderweele's records and found that Vanderweele had three .22-caliber pistols registered to his name, but no silencers. Petschke then sought a warrant to search Vanderweele's house for evidence that he possessed unregistered silencers. A magistrate judge issued the warrant.

On September 22, Petschke and a search team, consisting of ATF and local law enforcement officers, executed the warrant. Fifteen minutes before the search, a white male drove a moped past them. Detectives Jeffrey Erickson and his partner were posted on an undercover watch of the alley behind Vanderweele's house. Suspecting that the moped's rider was Vanderweele, the detectives pulled next to the moped at an intersection five blocks from the house. Detective Erickson rolled down his window and, as a ruse, said, "Hey, Mike." The driver responded that his name was James. Then the detectives exited their car and asked Vanderweele for identification. Erickson called Petschke to notify him that he was with Vanderweele.

Erickson checked the police database and found that Vanderweele's driver's license was restricted—he was only allowed to drive to work and medical appointments. Erickson asked Vanderweele where he was going. Vanderweele replied that he was headed to the grocery store for cigarettes. Erickson asked Vanderweele to return home for the search. Vanderweele consented.

Erickson and his partner could not transport Vanderweele in their unmarked car, so they called for backup. Officer Sovey responded. The officers told Vanderweele that he was not under arrest, but that they were required to handcuff him for the front-seat ride to his house because Sovey's police dog was in the backseat. Sovey handcuffed Vanderweele and then drove him five blocks back to his house.

Meanwhile, Petschke's team searched Vanderweele's house. Petschke left the house to talk to Vanderweele and advised him of his Miranda rights. Vanderweele agreed to answer questions, telling Petschke that he had four silencers in the house and where to find them. Sovey again placed Vanderweele in his police vehicle while the search continued.

The search team found four silencers, three handguns, a rifle, gun parts, and tools that could be used to make silencers. One of the handguns had a threaded barrel so that a silencer could be screwed onto it. Police found that gun, a silencer, two loaded magazines, and several boxes of ammunition in a black nylon bag beneath Vanderweele's bed.

After finding the silencers, Petschke read Vanderweele his Miranda rights, for the second time. This time Vanderweele requested an attorney. Petschke asked no further questions. After the search was complete, Petschke's team took the contraband, but left Vanderweele at his home.

In February 2011, a federal grand jury indicted Vanderweele for possession of unregistered silencers in violation of 26 U.S.C. § 5861(d). Vanderweele filed a motion to suppress the items seized from his house and his statements to Petschke. He argued that the search warrant failed to establish probable cause because it was based on stale information and did not show a connection

between the silencers and his home. He also argued that he was not read his Miranda rights and that Petschke coerced him to make statements.

A magistrate judge held an evidentiary hearing at which Petschke, Erickson, Sovey, and Vanderweele testified. Afterward, the magistrate judge recommended that the district court find that the affidavit in support of the search warrant sufficiently showed probable cause to search Vanderweele's home, and that in any event the officers executed the warrant in good faith. The magistrate judge also recommended finding that Petschke gave a Miranda warning to Vanderweele before he made his initial statement. The district court adopted these findings, but remanded the case for an additional finding on whether Petschke coerced Vanderwheele. Accordingly, the magistrate judge prepared a second report and recommendation, in which he found no coercion. The district court adopted that finding over Vanderweele's objection.

On April 18, 2012, Vanderweele pled guilty to unlawful possession of silencers pursuant to a conditional plea agreement. In the plea agreement, Vanderweele waived his right to appeal, except "to seek review of the U.S. District Court's denial of his motion to suppress evidence."

This appeal followed.

## II.

## A.

Vanderweele argues that the district court erred when it denied his motion to suppress his statements to Petschke. In support, Vanderweele cites the Supreme Court's recent decision in *Bailey v. United States* to contend that his statements were a product of an illegal detention, and therefore must be suppressed. 133 S. Ct. 1031 (2013).

We review de novo whether Vanderweele waived his right to make this argument on appeal. *United States v. McGilvery*, 403 F.3d 361, 362 (6th Cir. 2005). Conditional guilty pleas must "reserv[e] in writing the right to have an appellate court review an adverse determination of a specified pre-trial motion." Fed. R. Crim.P. 11(a)(2). The defendant has an "affirmative duty" to "preserve any issues . . . by specifying them in the plea itself." *United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001).

Vanderweele's plea only "reserves the right . . . to seek review of the U.S. District Court's denial of his motion to suppress evidence." This language preserves only the arguments he made below. *See United States v. Woosley*, 361 F.3d 924 (6th Cir. 2004). In support of his motion to suppress below, Vanderweele made three arguments: first, the search warrant affidavit failed to establish probable cause; second, he was not read his Miranda rights before he made his statements to Petschke; and third, Petschke coerced him to make statements. Vanderweele never argued below that he was detained illegally. Even when the district court remanded the case to the magistrate judge to consider Vanderweele's coercion argument, he did not argue that he was unlawfully detained. Vanderweele, preserved his right to appeal the district court's denial of his motion to suppress, but he is limited to the arguments that he made there. *See id.* Thus, Vanderweele waived his right to argue that he was illegally detained.

Vanderweele responds that fairness requires remand because *Bailey* was decided after the district court denied his motion to suppress. But a guilty plea "does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." *Brady v. United Sates*, 397 U.S. 742, 757 (1970). Because Vanderweele did not specify in his plea that he could make new

arguments on appeal based on beneficial changes of law, he is precluded from arguing that he was unlawfully detained under *Bailey. See United States v. Bradley*, 400 F.3d 459, 464-65 (6th Cir. 2005).

B.

We next consider the district court's denial of Vanderweele's motion to suppress the evidence that the ATF found when it searched his home. Vanderweele contends that the search warrant affidavit was insufficient to establish probable cause because there was no nexus between the silencers and his home, and it relied on stale information.

Probable cause exists here if there was a "fair probability" that silencers would be found at Vanderweele's house. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983). We review the sufficiency and staleness of an affidavit to see whether the magistrate judge had a "substantial basis" for concluding that the search would uncover evidence of wrongdoing. *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001). And we give "great deference" to the magistrate judge's discretion, which should not be reversed unless arbitrarily exercised. *United States v. Allen*, 211 F.3d 970, 973 (6th Cir. 2000) (en banc).

First, we consider the district court's finding that there was a sufficient nexus between Vanderweele's possession of the silencer and his home. Vanderweele argues that the informant only saw him with the silencer at the Rebels Motorcycle Club, and therefore there was no connection between the silencer and his home. But here, the affidavit stated that Petschke was aware, based on his training and experience, "that firearms, ammunition, and related items are commonly stored within the owner or possessor's dwelling." Moreover, the affidavit cited our statement in *United*

*States v. Smith* that "individuals who own guns keep them at their homes." 182 F.3d 473, 480 (6th Cir. 1999). The magistrate judge had reason to believe that the silencer would be found at Vanderweele's house.

Next, Vanderweele argues that there was not probable cause for the search because the affidavit relied on an informant's statement that Vanderweele possessed a silencer up to seven months before the search. The magistrate judge reviewed for staleness using the four factors outlined in *United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006). He found that Vanderweele was not nomadic and that his house was his permanent residence. *See id.* The magistrate judge also found that the crime, possession of unregistered silencers, was likely to continue for an extended period, even throughout the suspect's lifetime. *See id.* He also decided that a silencer is like a gun, easily transferrable, but more commonly kept by its owner for a long time. A gun is indeed an apt simile for a silencer, after all, they are complementary goods. And the seven-month delay here was well within the expiration date approved by courts. *See United States v. Lancaster*, 145 F. App'x 508, 513 (6th Cir. 2005) (two-year-old information that defendant was seen firing a machine gun was not stale); *United States v. Batchelder*, 824 F.2d 563 (7th Cir. 1987) (nine-month-old information that company shipped silencer to the defendant was not stale). Thus, the magistrate judge was well within his discretion to find that the affidavit's information was fresh enough to supply probable cause.

In response, Vanderweele argues that the firearm records showed that he had previously sold six of the nine .22-caliber handguns that he had owned, and that the magistrate judge should have inferred that he might have sold the silencer as well. That Vanderweele transferred some—but not

all—of his guns shows the opposite. The magistrate judge, therefore, did not arbitrarily exercise its

discretion when it found that the silencer information was not stale.

*     *     *

The district court's judgment is affirmed.